AUGUSTE J. ROSSI, PROSECUTOR, v. BOARD OF COMMIS-
SIONERS OF THE CITY OF PERTH AMBOY, AND THE
CITY OF PERTH AMBOY, A MUNICIPAL CORPORATION,
AND STILLMAN, DELEHANTY AND FERRIS, INCORPO-
RATED, A CORPORATION, DEFENDANTS.

Submitted October term, 1929—Decided May 27, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutor, *Henry K. Golenbock.*

For the Board of Commissioners of the City of Perth Am-
boy and the City of Perth Amboy, *Harry S. Medinets.*

For Stillman, Delahanty & Ferris, Incorporated, *Thomas
Brown.*

PER CURIAM.

This case comes up on writ of *certiorari* to review certain
resolutions of the board of commissioners of the city of Perth
Amboy, authorizing payments under a contract made be-
tween the said city and Stillman, Delahanty & Ferris, In-
corporated, for the building of a stone bulkhead and its
appurtenances.

The prosecutor does not question the propriety or legality
of the ordinance or of the contract, nor does he allege fraud
on the part of any of the defendants.

The contract embraces three related works; first, the building of a seawall, second, grouting of the same and, third, construction of certain sewer connections and allied works. The contract, dated October 20th, 1928, included all the projects as a single enterprise. Work began soon after the making of the contract. The disputed resolutions were of the following dates: December 5th, 1928; December 19th, 1928; February 6th, 1929; February 13th, 1929; March 20th, 1929; April 3d, 1929 and May 1st, 1929; and the payments were made accordingly. This proceeding began by a rule to show cause issued June 19th, 1929, more than six months after the first resolution and more than a month and a half after the last resolution.

The main questions at issue may briefly be stated. The controversy concerning the bulkhead hinges very largely upon the construction to be given an engineer's sketch indicating a cross section. On this sketch appears what might be termed a zero line showing a depth of six feet measured downward from that line and a height of twelve feet, measured upward, above it. The prosecutor contends that the bulkhead was intended to be eighteen feet in height and that inasmuch as it is not so, the city should not have paid the contract price. The defendants reply that the top of the bulkhead was to constitute a continuous level twelve feet above the normal ground line, and that the distance of six feet shown below, what we have called the zero line, was intended as an elastic or contingent measurement to cover the extent to which the contractor might have to go downward either to meet depressions in the surface or to reach solid ground below a shifting top-soil; that the contractor took the chances in this respect and that the amount bid was a lump sum regardless of whether greater or less work had to be done or more or fewer materials furnished.

The dispute concerning the grouting arises over the fact that that work was, under the city's direction, done on the inside rather than on the outside of the bulkhead, that, owing to the greater slope on the outside of the bulkhead, the grouting that was done was actually less than that which was an-

ticipated and that this should have resulted in a reduction of price. The answer made is that, after the contract was let, the city of Perth Amboy made an arrangement with an industrial concern whereby over a term of years the dumping of waste materials was to be made inside the bulkhead, thus constituting a fill that ultimately would make level land, and that to properly withhold the matter thus to be dumped it was necessary that the grouting should be on the inside of the bulkhead and that the difference in the cost of grouting was negligible, for the reason that certain working conveniences would have been available in the work on the outside of the bulkhead that were not available for the work as actually done on the inside.

The third phase of the controversy is concerned chiefly with the fact that there were fewer "bents," less extensive cribbing, and less pipe, actually installed than the contract called for. No question is raised as to the engineering propriety of these changes. The reply is that there was a deduction actually made, in addition to which the contractor made no charge for specified extras for which it otherwise would have collected.

Inasmuch as the controversy is free of any charge of fraud, or intentional wrongdoing, and the money directed by the resolutions to be paid was in fact paid, the controversy resolves itself into a question of whether the city authorities acted within their strict legal rights in passing the resolutions. Neither the work nor the payments could have been stopped at the time the prosecutor bestirred himself.

The points and the facts are of a debatable character and called for the exercise of discretion on the part of the municipal body. That there was no such flagrant abuse of that discretion as to justify the imputation of fraud or willful misconduct is indicated by the absence of charges of that nature. In the absence of fraud and in view of the factual uncertainties, we consider that the laches of the prosecutor in delaying his application until after the municipal acts of which he complains were long since completed should result in a dismissal of the writ. *Wood* v. *Millville*, 85 *N. J. L.* 734.

The writ is dismissed, without costs.